THE KENFIELD-LEACH COMPANY, Plaintiff in Error, *vs.*
INDUSTRIAL PUBLICATIONS, Inc., Defendant in Error.

*Opinion filed February 18, 1926—Rehearing denied April 9, 1926.*

1. STATUTES—*a statute changing only the remedy or procedure applies to all existing actions.* If a statute confers a vested right it cannot afterward be altered or amended so as to destroy the right, but if a change in the law affects only the remedy or procedure all rights of action are governed thereby, without regard to whether they accrued before or after such change and without regard to whether suit had been previously instituted or not, unless there is a saving clause as to existing litigation.

2. APPEALS AND ERRORS—*amendment of 1925 to the Practice act, providing for review of judgments of Appellate Court by certiorari, applies to existing judgments.* The amendment of July 1, 1925, to section 121 of the Practice act, providing that judgments of the Appellate Court may be reviewed by *certiorari* upon application to the Supreme Court in accordance with the act, applies to judgments of the Appellate Court entered prior to the taking effect of the amendment, as the amendment changes only the remedy or method of procedure for review and does not affect a vested right.

3. CONTRACTS—*when witness cannot testify as expert in suit on publisher's contract.* Where a publisher brings suit on a contract for the printing and publishing of periodicals and the defense is that the publisher had violated his agreement by making his prices more than twenty per cent higher than other publishers for similar periodicals, an employee of the defendant should not be permitted to testify that she had made a comparison of the price charged by the plaintiff with the rates for the publication of another periodical, where there is no showing that the other periodical was similar in every respect to the publications published by the plaintiff for the defendant, or that the witness was familiar with the details of the business of publishing the other publications which entered into the fixing of prices.

WRIT OF ERROR to the First Division of the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JoSEPH B. DAVID, Judge, presiding.

W. T. ALDEN, (CHARLES MARTIN, of counsel,) for plaintiff in error.

320—29

MOSES, KENNEDY, STEIN & BACHRACH, (WALTER BACHRACH, and ISAAC E. FERGUSON, of counsel,) for defendant in error.

Mr. JUSTICE HEARD delivered the opinion of the court:

Plaintiff in error brought suit in assumpsit in the superior court of Cook county against defendant in error, and issue having been joined, a trial thereon resulted in a judgment in favor of defendant in error in bar of the action and for costs. Plaintiff in error having appealed from this judgment to the Appellate Court for the First District, that court on June 22, 1925, entered its judgment affirming the judgment of the superior court of Cook county. At the October, 1925, term of this court a petition of plaintiff in error for a writ of *certiorari* was allowed and the record brought to this court for review. Defendant in error filed a motion to dismiss the application for a writ of *certiorari* upon the ground that this court had no jurisdiction to review the judgment of the Appellate Court in this case, and this motion was taken with the case.

At the time of the judgment of affirmance in the Appellate Court that judgment could be reviewed by this court only upon a certificate of importance by the Appellate Court in accordance with the provisions of section 121 of the Practice act as amended July 1, 1909. On July 1, 1925, an amendment to this section went into effect, by which it was made competent for this court to require by *certiorari* any case in which final judgment had been rendered in an Appellate Court to be certified to this court for review and determination upon application to this court in accordance with the provisions of the act. When the amendment of 1925 went into effect the judgment of the Appellate Court, while not subject to review by this court by *certiorari,* was still subject to review by appeal. This amendment did not affect any vested rights but affected only the remedy or the

procedure for review. If a statute confers a vested right it cannot afterward be altered or amended so as to destroy the right, but if a change in the law affects only the remedy or procedure all rights of action are governed thereby, without regard to whether they accrued before or after such change and without regard to whether suit had been previously instituted or not, unless there is a saving clause as to existing litigation. (*Otis Elevator Co. v. Industrial Com.* 302 Ill. 90.) Defendant in error did not have on July 1, 1925, a vested right in the judgment of the Appellate Court, as it was still subject to review by this court. The amendment of 1925 merely changed the remedy or method of procedure to obtain such review, and this court had jurisdiction to grant the writ of *certiorari* in this case.

The suit in this case was brought upon a written contract entered into between the plaintiff in error and Harold Rosenberg, all of the obligations of which were subsequently assumed by defendant in error. Plaintiff in error was engaged in the printing and publishing business and published two trade publications, known as the *Brick and Clay Record* and the *Building Supply News*. Rosenberg was a stockholder, officer and director in the plaintiff in error company. He entered into a contract with plaintiff in error to purchase the two publications mentioned. By the terms set forth in paragraph 8 of the contract Rosenberg agreed to give plaintiff in error, for a period of eight years from June 1, 1920, the work of typesetting, printing, binding and mailing the two publications, with a provision in paragraph 8 that Rosenberg or his assigns should have the right at any time, upon giving thirty days' notice, to withdraw the work, or any part thereof, from plaintiff in error by paying plaintiff in error at the rate of $1000 each year for each publication for the unexpired portion of the eight years. Paragraph 7 of the contract also provided that Rosenberg might withdraw the work if the price charged by plaintiff in error was twenty per cent or more

in excess of the price charged by three or more responsible printing concerns in the city of Chicago doing similar work. Under a provision in the contract granting to Rosenberg the right to sell and assign the publications to a corporation to be organized by him, Rosenberg sold and assigned the two publications to the defendant in error corporation.

Rosenberg withdrew the work from plaintiff in error, and the principal questions in the case are whether Rosenberg exercised his right to do so under paragraph 7 or paragraph 8 of the contract, and if under paragraph 7, whether or not he was justified in so doing.

One of the material controverted questions in the case was whether or not, at the time Rosenberg withdrew the work, the prices charged by plaintiff in error were twenty per cent higher than the prices charged by three other responsible printing concerns in Chicago for doing similar work, and upon this question the evidence was conflicting. The evidence showed that the prices for work of this character varied because of difference in style of printing, binding, headings, headlines, makeup and presswork, and in quality of paper, manuscript, the half-tones, zinc etchings, and in the character of the ink and size of the type used and the number of copies published of each issue, and a great number of conditions and circumstances with reference to the publication itself which would govern in submitting prices for publishing it.

Clara R. Lacey, assistant treasurer of defendant in error, testified that she had made a comparison between the charge for printing the. *Brick and Clay Record* and the *Building Supply News,* and that for printing the *National Miller,* which was published by the Craftsmen, and that on the June 20 issue of the *Building Supply News* plaintiff in error's price was fifty per cent higher than the same work would have cost if done by the Craftsmen, and that on the August 8 issue of the *Brick and Clay Record* the Kenfield-Leach price was sixty-one per cent higher than the same

work would have cost if done by the Craftsmen. This evidence was objected to on the ground that no basis was laid for any comparison of prices between the *National Miller* and defendant in error's publications, and that the witness was not competent to make such comparative statement, and that it was a conclusion invading the province of the jury, which objection was overruled by the court. The witness was also permitted to make the somewhat contradictory statement that plaintiff in error's price was 28.8 per cent higher for printing the August 8 issue of the *Brick and Clay Record* than the same work would have cost defendant in error if done by the Craftsmen and 35.9 per cent higher than it would have cost defendant in error for the June 20 issue of the *Building Supply News*. The witness was not a practical printer but worked in the office as a stenographer. She had nothing to do with the factory end of the business or the supervising of the typesetting or mechanical details of the business. While she had had experience in taking a set of rates applying to a job of printing and computing the cost of a complete issue of the paper, she had no knowledge of the details of the business of the Craftsmen or of the *National Miller* or of the conditions in the Craftsmen establishment, which were shown by the evidence to enter into the fixing of prices of publications. The conditions with reference to the other publications are not shown to be the same as those with reference to the *Brick and Clay Record* and the *Building Supply News*. The testimony of the witness does not show that she was sufficiently familiar with the details entering into the prices which she was comparing to enable her to testify as an expert upon this question, and the court should not have allowed her comparison to be given in evidence. This was the principal evidence upon the material, ultimate fact in controversy in the case, and it is obvious that it would greatly tend to mislead the jury to the prejudice of plaintiff in error. The court should have sustained plaintiff in er-

ror's objection to the giving of this testimony, and the failure to do so is reversible error.

The judgments of the Appellate Court and the superior court are reversed and the cause remanded to the superior court of Cook county.    *Reversed and remanded.*