Trustees of Schools of Township No. 33 North, Range No. 3 East of the Third Principal Meridian, La Salle County, Appellee, v. Miriam E. Farnsworth et al., Appellants.

Gen. No. 8,815.

Opinion filed December 22, 1934.  Rehearing denied February 5, 1935.

BUTTERS & BUTTERS, WILHELM & WILHELM and C. B. CHAPMAN, all of Ottawa, for appellants.

ELMER J. MOHAN, State's Attorney, for appellee; HIBBS & POOL, of Ottawa, of counsel.

MR. JUSTICE DOVE delivered the opinion of the court.

Miriam E. Farnsworth was, on June 26, 1930, elected by appellee treasurer of township 33 north, range 3 east of the third principal Meridian, La Salle county,

Illinois. She executed a bond with the other appellants herein as sureties, in the sum of $200,000, the obligee on the bond being the board of education of said township. This bond was approved by the trustees and by the county superintendent of schools, as provided by law, and thereupon the treasurer entered upon the performance of her duties. As such treasurer she deposited the funds coming to her possession in the Ottawa Banking and Trust Company, the National City Bank, the First National Bank and the People's Trust and Savings Bank, all of Ottawa, Illinois. On September 29, 1931, the Ottawa Banking and Trust Company was closed by the State auditor and at that time the treasurer had on deposit in that bank the sum of $31,975.26. On September 30, 1931, the National City Bank was closed by the comptroller of the currency and the treasurer had on deposit in that bank the sum of $20,000. On October 1, 1931, the People's Trust and Savings Bank was closed by the State auditor and the treasurer had on deposit in that bank the sum of $20,000.

On October 9, 1931, Miss Farnsworth resigned as treasurer, and Earl O. Haeberle was elected and qualified as her successor. At the time of her resignation there was due the trustees from her, as treasurer, the sum of $77,007.17. Of this amount $5,031.91 was on deposit in the First National Bank of Ottawa and this she turned over to Haeberle. The balance of $71,975.26 was in the closed banks and although a demand was made upon her for that sum by her successor on November 4, 1931, she was unable to comply with that demand. On March 2, 1932, two of the trustees delivered a written communication to the State's attorney of La Salle county, requesting him to commence suit upon the official bond of Miriam E. Farnsworth, for the money she had failed to pay over. The third trustee was John V. Kenny, one of the appellants herein, who had signed the bond of Miss Farnsworth and thereafter, as one of the trustees, had approved the same.

On March 2, 1932, this action in debt was commenced by appellee upon the official bond of the treasurer, Miss Farnsworth. The declaration was filed on March 4, 1932, and was in the usual form. In each of the three counts of the declaration, the bond was set out either in substance or in *haec verba,* and each count assigned as a breach thereof the failure of the treasurer to pay over to her successor the said sum of $71,975.26. On June 14, 1932, three defendants entered their special and limited appearances for the purpose of filing a motion to dismiss the suit under the Act of May 7, 1932, hereinafter referred to. On July 2, 1932, this motion was heard and subsequently denied. Seven of the defendants filed a general demurrer to the declaration, which was overruled and thereafter, on October 29, 1932, a plea of the general issue with notice of special matters of defense was filed by all the defendants. Upon this plea issue was joined and a trial had before the court and jury, which resulted in a verdict finding the issues for the plaintiff and the amount of the debt to be $200,000, and assessing the damages of the plaintiffs at $67,000. Upon this verdict judgment was rendered and the record is brought to this court for review by appeal.

Appellants first contend that the State's attorney was without authority to commence this suit. It was not until November 13, 1933, that the defendants entered, in the trial court, their motion to dismiss this action for this reason. Prior to this time defendants had filed a motion to dismiss, basing the same upon the Act of May 7, 1932. They had also filed a demurrer which had been heard and overruled, and on October 29, 1932, had filed their pleas in bar. This motion therefore came too late. The record, however, discloses that one of the defendants, John V. Kenny, was one of the sureties on the school treasurer's bond and was also one of the trustees. The two remaining trustees, by written communication to the State's attorney, on March 2, 1932, requested and authorized

him to bring this suit upon the official bond of Miss Farnsworth. We see no reason why the State's attorney should not bring it when directed to do so by these two trustees. Furthermore, the record discloses that on June 2, 1932, after the suit was instituted, a meeting of the trustees was duly called as provided by law, and a resolution was there duly adopted, which recited the defalcation of the treasurer, the written request made to the State's attorney on March 2, 1932, to institute this suit and the fact that it had been instituted. This resolution then expressly made the former request of March 2, 1932, of the two trustees, the official request of the board, and ratified, approved and confirmed the action of the State's attorney in starting the suit, and directed him to prosecute it to a conclusion. The suit was properly instituted and there was no error committed in overruling this motion to dismiss.

It is next insisted that the trial court erred in denying appellant's motion to dismiss the suit under the provisions of the Act of May 7, 1932, in force July 1, 1932. This statute is as follows: "No action shall be brought nor shall any action lie against the treasurer or custodian of any public funds which have been, or hereafter may be, lawfully deposited in any bank which has closed or failed, or hereafter may close or fail, for the failure to pay over such funds, or any part thereof within a period of two years after such bank has failed or closed nor shall such treasurer or custodian be liable to pay over such funds, to the proper authorities during such period unless he has received payment of all, or a part of such funds, from the officials of such closed or failed bank or from the receiver therefor or from the sale or disposition of any securities pledged for the repayment of such funds, nor shall such treasurer or custodian be liable during such period for any greater sum than the amount or amounts he has received as such treasurer or custodian in the liquidation of such bank or the sale or disposition of such

securities; provided that the provisions of this Act shall not apply to any such treasurer or custodian of public funds unless each of the sureties upon the bond of such treasurer or custodian shall consent thereto in writing. Such consent shall be and shall be construed and held to be the agreement of such surety that the provisions of this Act shall not operate as a release from or affect the condition of such bond, but that such bond shall continue in full force and effect." Cahill's Illinois Revised Statutes, 1933, ch. 16a, ¶ 40. The constitutionality of this Act was sustained in *Town of Cheney's Grove v. Van Scoyoc,* 357 Ill. 52, which was an action brought upon the official bond of Van Scoyoc, who was supervisor, and therefore *ex officio* treasurer of the road and bridge fund of the Town of Cheney's Grove. The beneficial plaintiff was a contractor and as such entitled to certain funds under a contract entered into by it and the township.

In the instant case, appellees insist, first, that the question of the application of this Act was not properly raised in the trial court upon appellant's motion to dismiss, but that a plea in abatement was necessary; second, that if the motion to dismiss did properly present the question, then the provisions of the Act were not applicable inasmuch as this suit was instituted prior to the time the Act was passed and became effective, and therefore this suit was not affected by it; and third, that inasmuch as this suit was tried and the judgment entered more than two years after the banks closed in which the treasurer kept her funds, appellants have therefore had the full benefit and advantage of the Act, and its purpose having been achieved, the result of a reversal of the judgment would only be to delay and defeat appellees in their just demands.

This suit was commenced on March 2, 1932, and the declaration filed two days later. Service was promptly had and on June 14, 1932, the defendants Weese, Godfrey and Kenny, seeking to avail themselves of the

provisions of the Act of May 7, 1932, entered their respective special appearances in the trial court, and moved the court to dismiss the suit. The next day the remaining defendants filed a general demurrer to the declaration. This was the condition of the record on July 1, 1932, the date the Act of May 7, 1932, became effective. On July 2, 1932, the motion of Kenny to dismiss the suit was heard. Upon the hearing of this motion, an instrument signed by all of the appellants was offered in evidence, together with some oral evidence from which it clearly appears that appellants had complied with the provisions of the Act, desired to avail themselves of its provisions, and sought to bring themselves within its purview. On September 12, 1932, the demurrer of certain defendants was heard and overruled, and on the same day the defendants, other than Kenny, filed their written motion to dismiss, seeking to take advantage of the provisions of the Act of May 7, 1932. Both motions to dismiss were overruled, the trial court holding the Act of May 7, 1932 unconstitutional. On October 22, 1932, the defendants filed a plea of the general issue, accompanying the same with notice of special defenses in which they all again set up their reliance upon the provisions of the Act of May 7, 1932, and facts were stated which were sufficient to show they were entitled to its benefits. The cause was thereafter set for trial for October 16, 1933, and a motion by appellants to strike it from the trial calendar was denied. Again on November 13, 1933, a further motion was made to dismiss, supported by an affidavit, which recited the Act of May 7, 1932, and called attention to the provisions of the instrument executed by all of the defendants to the effect that they each had complied with and desired to avail themselves of the provisions of that Act. This motion was denied and the cause proceeded to trial on November 14, 1933.

We are of the opinion that appellants by their several motions and plea with notice of special defenses properly raised this question in the trial court. It was not contended in the trial court that the question was not properly raised. The position of appellees there was that the Act of May 7, 1932, was invalid. The trial court sustained their contention and denied the motion, not because the question was not properly raised, but because of the invalidity of the Act. Furthermore, in the *Van Scoyoc* case, *supra*, the defendants filed a joint plea, which set up this same Act as a defense and averred that the suit was prematurely brought. A demurrer was sustained to this plea and the defendants electing to abide by their plea, judgment was rendered against them.

The principal question presented to this court for determination upon this record is whether the Act of May 7, 1932, should be construed as applying to cases then pending. The general rule is that a statute does not have a retroactive effect and whether the legislature intended this Act to affect pending litigation must depend upon a construction of the words which the legislature used. There was no prohibition against the institution of this suit at the time it was started. It was rightfully begun. The depository banks had closed on September 29, 30 and October 1, 1931. This suit was instituted five months later. The first five words in the Act "No action shall be brought" clearly prohibit the institution of any such suit as the instant one during the period therein specified. The legislature, however, did not stop there, but added "nor shall any action lie." These words must have been intended to have some meaning and certainly do not mean the same thing as the preceding five words. The word "action" is used in each phrase. In legal practice this word means the formal demand of one's right from another person or party made and insisted on in a court of justice. In *Brand v. Brand,* 252 Ill. 134, it is said that the words "action" and "suit" were, as

a general rule, synonymous and used interchangeably to mean any legal proceeding in a court for the enforcement of a right. In 1 C. J. 926, it is said that the term "action" in the absence of any restrictive words, has a broad and comprehensive application. In *Mulcahy v. Mulcahy*, 84 Conn. 659, it is said that when it is used in statutes regulating judicial procedure, it embraces all proceedings in a court of justice for the purpose of obtaining such redress as the law provides, and in *Delta & Pine Land Co. v. Adams*, 93 Miss. 340, it is said the word "action" must be so construed as to work out what appears clearly to have been the purpose of the legislature.

The term "action" has been used as synonymous with the terms "case," "cause," "controversy" and "proceeding at law." 1 C. J. 928. Treating the word "action" as used in this statute as though it embraced all the proceedings from the formal institution of a suit until its conclusion, and reading this phrase in connection with the conditions which then existed and which the legislature was endeavoring to meet, some of which succinctly appear in the opinion in the *Van Scoyoc* case, we are of the opinion that the phrase "nor shall any action lie" was equivalent to stating that if such an action was pending, it could not be further prosecuted and prohibited the taking of any steps until the period imposed by the statute had elapsed. Under this construction of the statute, appellants were entitled to have all proceedings in this case suspended or held in abeyance until the treasurer has received funds from the receiver of the bank in satisfaction of the deposit or until two years had elapsed after the banks in which the treasurer's funds were deposited had closed, as provided by the Act. If the legislature did not mean that this Act should apply to pending suits, it could very easily have limited the provisions of the Act to suits thereafter brought, but it did not do so in any language, either express or implied.

Counsel for appellees insist that there was a breach in the treasurer's bond when she failed to turn over the money in her possession to her successor in office, and that therefore appellees became vested with a right to maintain this suit, and that to give the Act the construction we have adopted would be to invalidate it because it then affects existing vested rights.

In *Otis Elevator Co. v. Industrial Commission,* 302 Ill. 90, it appeared that Theodore Rosgard died on December 13, 1920, while in the employ of the elevator company, and his mother applied for compensation under the Workmen's Compensation Act, Cahill's St. ch. 48, ¶ 201 *et seq.* On January 18, 1921, the arbitrator made an award which was confirmed by the commission and on July 14, 1921, the circuit court of Cook county confirmed the decision of the industrial commission. An amendment to the Compensation Act became effective July 1, 1921, which provided that the circuit court on certiorari should have the power to review all questions of law and fact presented by the record. Upon the hearing in the circuit court, that court refused to review the facts in the case. In reversing the judgment of the circuit court, it was held that the employer was entitled to have the circuit court review all questions of law and fact presented by the record, inasmuch as the statute as amended governed the remedy and procedure only. "It is always held," says the opinion by Mr. Justice Cartwright, "that there is no vested right in a public law which is not in the nature of a grant and no vested right in any particular remedy or any special mode of administering it. If a statute confers a vested right, it cannot afterward be altered or amended so as to destroy the right, but if a change in the law affects only the remedy or procedure, all rights of action are governed thereby, without regard to whether they accrued before or after such change and without regard to whether suit had been previously instituted or not

unless there is a saving clause as to existing litigation. (Citing cases.) In several of these cases, changes in the law pending litigation imposed additional conditions to the exercise of the right of eminent domain, and in *Holcomb v. People, supra,* a bastardy proceeding was instituted when the law did not permit an appeal from the county court to the circuit court, but an act was afterward passed permitting such appeal, and it was held that the act took effect as to the pending proceeding.'' This decision has been cited with approval in subsequent cases, and the law as there announced adhered to. *Kenfield-Leach Co. v. Industrial Publications,* 320 Ill. 449; *New Staunton Coal Co. v. Industrial Commission,* 304 Ill. 613; *Chicago Board of Underwriters v. Industrial Commission,* 332 Ill. 611.

Cahill's Ill. Rev. Statutes 1933, ch. 122, ¶ 374, makes a school treasurer liable to the trustees upon his or her official bond for any failure or refusal upon the treasurer's part to perform any of the duties required of the treasurer by law, the damages sustained to be recovered in an action of debt by the trustees for the use of the township. The instant suit was brought by virtue of the provisions of that statute, and appellees invoked the remedy there provided. In the *Van Scoyoc* case the court said that the right to bring that suit was a remedy given by statute, that the Act of May 7, 1932, granted no new rights or estates to anyone and that there was nothing therein that could be construed to release the obligors on the bond from a substantial fulfilment of the obligation assumed. So here the remedy provided by the school law was not in any way altered or amended by the Act of May 7, 1932, and, as held in the *Van Scoyoc* case, *supra,* the provisions of the Act of 1932 affect the procedure only and no vested right is destroyed.

The legislature may enact statutes and change the law, but is without authority to direct what orders shall be entered by a court in pending actions as the

application of the law to particular cases is a judicial function and the adjudication as to what orders shall be entered in such cases is the exercise of judicial power which does not belong to the legislature. *People v. Madison,* 280 Ill. 96, and the Supreme Court held in that case that it must dispose of the case under the law as it was at the time it decided the case and not as it was when the judgment of the circuit court was rendered. In the Act of May 7, 1932, there was no attempt on the part of the legislature to direct how the courts should construe that Act; yet it would have been entirely within the legislative power to save from the operation of that Act pending litigation, but not having done so, then under the construction of similar statutes, it must be held that it was intended by the legislature that the provisions of that Act should be applied to cases then pending. *Kenfield-Leach Co. v. Industrial Publications, supra.*

The bond which forms the basis of this suit was not drawn in favor of the board of trustees of Township 33, Range 3, La Salle county, Illinois, as provided by the statute, but the board of education of said township, range, county and State was named as the obligee therein. The bond was also irregular in that one of the obligors was Kenny, a trustee. These facts, however, should not preclude a recovery thereon. It was executed by all of appellants. It was approved by all the trustees and by the county superintendent of schools, it was intended by everyone to be the official, statutory bond of Miss Farnsworth, and she, after its execution and approval, entered upon the discharge of her duties as treasurer, and thereafter received and paid out school funds. She and her sureties are therefore estopped now to deny the validity of the bond. *Estate of Ramsay v. People,* 197 Ill. 572.

For the reasons assigned, the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*